THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTAR GROUP, INC., and
COSTAR REALTY INFORMATION, INC.,

                           *Plaintiffs*,

                    v.

ZILLOW GROUP, INC., and
ZILLOW, INC.,

                           *Defendants*.

CASE NO. 2:25-cv-02591-JNW

**FIRST AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "CoStar"), by and through their undersigned counsel, bring this Complaint against Zillow Group, Inc. and Zillow, Inc. (collectively, "Zillow"), and allege as follows:

**INTRODUCTION**

1.      CoStar brings this suit to redress Zillow's widespread, systematic, and ongoing infringement of CoStar's copyrighted photographs, which Zillow has unlawfully exploited—and continues to exploit—to bolster its online rental listings business.

2.      This is not a case about an isolated mistake or inadvertent oversight; it is about a deliberate and sustained course of misconduct by a recidivist infringer.  Zillow has systematically

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

1

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

infringed tens of thousands of CoStar's copyrighted photographs. Even after this lawsuit exposed the staggering extent of its known wrongdoing, Zillow's misconduct has continued unabated—through Zillow's infringement of thousands *more* of CoStar's images, *and* Zillow's *renewed* infringement of images identified in CoStar's original complaint that Zillow claimed it had ceased using—only to infringe those very same images again. Zillow is not a passive bystander to the rampant infringement on its platform; it is the architect of that infringement.

3.    Zillow has displayed, and profited from, its use of over **50,000** CoStar-copyrighted images on Zillow.com and other Zillow sites—a number which has grown by thousands (and continues to grow) since CoStar first brought suit. Most of these images include the CoStar watermark. And in many instances, an image appears on multiple different Zillow pages and different versions of listings, such that the images are displayed in total over **250,000** times.

4.    Zillow's misconduct is not limited to the Zillow family of websites. Through lucrative syndication agreements, Zillow distributes CoStar's images to its partnership network of listing websites, hosted by Zillow's supposed competitors, Realtor.com and Redfin.

5.    Zillow's willful, mass infringement warrants the imposition of permanent injunctive relief as well as a substantial award of damages.

6.    CoStar is an industry leader in real estate listings, information, and analytics. Founded in 1986, CoStar has worked for decades to offer the real estate industry premium information about, and images of, residential and commercial real estate. CoStar also owns and operates real estate listing websites for apartments (Apartments.com), single-family homes (Homes.com), and commercial real estate (LoopNet.com).

7.    A critical ingredient of CoStar's success has been its extensive efforts to generate intellectual property concerning the world's real estate, including real estate photography. Since its founding, CoStar has employed thousands of professional photographers to take millions of photographs of residential and commercial real estate. As the owner of the world's largest real estate image library, and as is widely known in the industry, CoStar licenses its photographs on a

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

2

limited basis to brokers, property owners, property managers, and others advertising properties for sale, lease, or rent on CoStar's websites.

8.    To protect its massive investment in photography, CoStar registers its photographs with the United States Copyright Office.  As a matter of company policy and practice, CoStar also protects its rights to these photographs, and conveys that they are copyrighted works, by watermarking them with its company logo—five stylized map pins arranged to outline the shape of a star (a play on "Co*Star*").  This logo is widely associated with CoStar and understood in the industry to indicate copyright ownership when displayed on CoStar's photographs.  Conversely, as a matter of policy and practice, CoStar does not apply its star watermark to photographs CoStar does not own.  CoStar's policy and practice regarding star watermarking has been in effect since at least August 2017.  The presence of CoStar's star watermark on images thus serves as a reliable, consistent, and publicly-known indicator of CoStar copyright ownership.

9.    CoStar's real estate photo library, to which it adds millions of photographs annually, sets it apart from its competitors.  Photographs are a critical facet of real estate listings.  Those who list a property, whether brokers, owners, or otherwise, want to show potential renters the property, not just tell them about it.  And potential renters likewise want to see the property.  Those needs, coupled with the ability to use photographs as an input to generate other content or features that enhance listings, make a comprehensive library of real estate photographs incredibly valuable to CoStar and its customers.  CoStar's competitors do not expend the same time, money, and effort to generate their own library of original listing photos, making CoStar's library a competitive advantage.

10.    Regrettably, some competing websites have sought to free-ride on CoStar's unique contributions to the industry.  That is what has occurred here.  Zillow has unlawfully copied, stored, published, and used tens of thousands of CoStar's copyrighted images to attempt to increase its standing in the online rental listings market.  While Zillow has tried to blame its customers— suggesting, without evidence, that all of the images at issue are direct "user uploads" to Zillow for

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

3

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

which it bears no responsibility—it is Zillow itself that is actively using CoStar's images to build its products and earn revenue.  Moreover, while Zillow conveniently, and reflexively, points the finger at its customers, Zillow has no explanation for the fact that it has actively procured listings as a result of various transactions and acquisitions, including its recent deal with ostensible rival Redfin.  Discovery will address and resolve these issues, including the various sources from which Zillow obtained CoStar's photographs.  But in any event, even *if* users were responsible for uploading some of CoStar's images to Zillow's websites, Zillow is independently liable for its *own* decisions to retain, store, display, rearrange, syndicate, and commercially exploit all of CoStar's images at issue, as detailed below.

11.    For many years, Zillow has run a real estate listing website focused on for-sale residential listings.  Zillow obtains for-sale listings primarily through a network of multiple listing services ("MLSs"), which are databases that host and distribute listing data (including photographs), uploaded by real estate brokers and sellers, of residential properties for sale.

12.    But Zillow does not have access to a similar MLS-style database of *rental* listings.  Unlike residential for-sale listings, MLSs do not offer comprehensive coverage of properties available to rent.  As a result, Zillow has historically lacked a large number of rental listings.

13.    In recent years, Zillow has publicly announced its intention to quickly expand the number of rental listings available on its websites.  In 2025, Zillow reported significant growth in rental listings (and rental revenues), including an increase in its supply of "multifamily" properties—which Zillow defines as buildings with 25 or more units—from 40,000 properties to 60,000 properties.  Zillow claims that its websites alone capture a majority of the U.S. real estate audience share.  When accounting for the shares of Zillow's partner sites, Redfin and Realtor.com (to which Zillow delivers listings, including those obtained as a result of its transaction with Redfin), Zillow asserts that the Zillow-Redfin-Realtor.com network exceeds a 90% audience or user share by some measures.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

4



14. What Zillow has not told the public, however, is that its growth, at least in rental properties and listings, is driven in significant part by Zillow's widespread and systematic infringement of tens of thousands of CoStar-owned real estate images. To date, CoStar has identified over **50,000** of its copyrighted images on Zillow's online rental listing websites.

15. The infringing photographs are concentrated on Zillow's multifamily listings—listings that Zillow is actively attempting to grow—and appear across thousands of multifamily listing pages. And many of the photographs appear on multiple listings and pages, such that the images are displayed in total over **250,000** times. Further, Zillow is sending these multifamily listings—along with CoStar's photographs—to its partner sites, Redfin and Realtor.com.

16. To support its rapid growth in rental listings, Zillow, as opposed to its customers, uses CoStar's copyrighted photographs in multiple ways. Zillow itself uses CoStar's copyrighted photographs to build webpages for properties that are not actively listed for rent and thereby generate new revenue. The CoStar images that Zillow uses to populate such pages are stored in Zillow's systems. Zillow makes the decision to store these images for its own future use; they are not maintained there by Zillow's users. Indeed, Zillow affirmatively invites owners or property managers to "Claim this property" on these inactive (or "unclaimed") property pages that Zillow

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

5

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

has populated with CoStar's photographs, allowing these newly identified owners or managers—if they "claim" the property—to use CoStar's photographs themselves to populate future rental listings. Because, as Zillow itself has repeatedly acknowledged, high-quality photographs are critical to effective real estate listings, Zillow increases the likelihood that property owners or managers will "claim" their properties by making CoStar's photographs available for their use. After an owner or property manager "claims" a property, Zillow markets rental advertising packages for that property to the claimant, as well as various other paid services. This results in a direct source of revenue for Zillow.

17. Zillow also uses CoStar's images to populate active multifamily listings. Zillow affirmatively curates the photographs on all active listings, necessarily including CoStar photographs, no matter how the listings were first generated or obtained, including by rearranging images to make listings more attractive to potential renters or buyers. Specifically, Zillow analyzes all listing photos for a property to predict which images "will generate the highest number of contacts for [a customer's] listing," and then reorganizes the photographs (including CoStar photographs) accordingly, affirmatively curating the photographs—in a manner that may be different from that chosen by the property owner or manager—to highlight what *Zillow* determines are the most attractive and compelling images for a given listing.

18. Finally, Zillow further monetizes these listings, again including CoStar photographs, by distributing them to its partners, Redfin and Realtor.com. The following is an example of a rental listing on Zillow's website using a CoStar-owned photograph—featuring CoStar's star logo—as the very first image. As shown, Zillow's website conceals CoStar's star logo, requiring a website visitor to click on and enlarge the image before CoStar's watermark can be seen.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

6

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200





19.    This same listing, along with the same watermarked photo, also appears on Redfin and Realtor.com's websites.  As shown below, these Zillow partner sites show that the listing was "Provided by Zillow."







**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200



20. Beyond using CoStar's photographs to populate unclaimed property pages and active property listings, curating CoStar photographs on active listings generally, and publishing CoStar photographs on its partner sites, Zillow also uses and benefits from CoStar's images as an input for features that Zillow touts as key offerings on its website. According to Zillow, the images stored in its system—which include tens of thousands of CoStar images—are used as training content to fuel Zillow's "Zestimate" estimator for sales and rental property values, and as an input in Zillow's personalized recommendations to users. But despite using copies of CoStar's images to develop and train the algorithms to support these features—such as algorithms that can detect subtle property features like granite countertops in images—Zillow does not attempt to use the ostensibly powerful image recognition tools it has created to identify and remove photographs bearing CoStar's star watermark.

21. The following is an example of an apartment available for rent in Seattle listed on Zillow, featuring multiple watermarked CoStar images, and displaying a "Rent Zestimate" of $1,615 per month.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

8



22.      Zillow's use of CoStar's photographs to generate revenue extends even beyond its website.  For example, Zillow has paid for ad placement in Google search results promoting unclaimed property pages that prominently feature CoStar-copyrighted photographs—even where those properties have no available units listed for rent on Zillow.  On information and belief, when Zillow purchases an advertisement (reflected in Google's search results as a "sponsored" advertisement), Zillow provides the content for those advertisements, including the associated landing pages, and uses CoStar photographs on those pages to entice users to click on the advertisement and become new users of Zillow's platform.



23.      Zillow's infringement of CoStar's copyrighted photographs results in significant financial benefits to Zillow.  Zillow uses CoStar-owned images on unclaimed property pages to attract rental professionals—including property managers, landlords and others—to whom Zillow sells advertising packages and a suite of tools.  Because the unclaimed listings feature CoStar's

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW                              9

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

photographs—which Zillow makes available to property claimants—those individuals are thus drawn to "claim" the property, which is instantly marketable (thanks to CoStar's photographs) upon being "claimed." As a result, those professionals pay Zillow for such advertising packages on a cost per lead, lease, listing, or impressions basis or based on a fixed fee.

24. CoStar's copyrighted photographs not only attract individuals to become revenue-generating customers by "claiming" unclaimed property pages, but they also help properties garner additional leads and impressions and thus help get leases signed, which drives more revenue to Zillow. Zillow further monetizes its infringement by selling renters its rental applications product, through which potential renters can submit applications to multiple properties (for a fee, of course)—a product that is made more attractive the more rental properties appear on Zillow. All of this directly increases Zillow's bottom line. Indeed, Zillow reported that its rentals revenue increased by 39% from 2024 to 2025, and that it expects this revenue to continue to increase—up to a billion-dollar plus revenue opportunity—based on the increasing number of property pages it is creating, a significant number of which display CoStar-copyrighted images.

25. Thus, the causal connection between CoStar's photographs and Zillow's revenue is direct and demonstrable. As discussed in more detail below, Zillow's own internal data confirms that listings with five or more photographs receive 30% more views than listings with fewer photographs. Professional photographs, such as those produced by CoStar's architectural photographers, are a material driver of listings views, engagement, and lead generation that translates into revenue. The unclaimed property pages that Zillow builds and promotes using CoStar photographs function as a customer acquisition funnel: they induce them to claim an instantly marketable property and begin a commercial relationship with Zillow, which is designed to, and does, lead directly to the customers' purchase of Zillow advertising packages, akin to an increase in subscribers to Zillow. CoStar's photographs are the draw that results in this revenue. That Zillow pays for ads on Google featuring CoStar photographs and promoting these pages—whether or not the pages have active listings—confirms that Zillow itself understands that CoStar's

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

10

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

photographs on those pages have significant commercial value and appeal, such that the display of those photos will induce, or draw, users searching for a property to click on the Zillow advertisement (rather than another page) if those images are displayed.

26.    This is not Zillow's first experience as a mass copyright infringer.  VHT, Inc. previously sued Zillow for the infringement of thousands of its real estate photographs, resulting in a judgment and the award of millions of dollars in damages against Zillow.  That litigation put Zillow on notice that infringing property photographs could (and did) result in substantial liability. Yet Zillow now carries out an even larger scheme, willfully attempting to bolster its rental listings business through the unauthorized use of CoStar's intellectual property.  And it does so knowingly. Indeed, a Zillow internal strategy document from December 2024—the year before this lawsuit was filed—acknowledged that Zillow was at risk of being sued specifically by CoStar for improperly using CoStar's photographs.

27.    Zillow's conduct after CoStar filed this lawsuit confirms and compounds the willfulness of its infringing activity.  After being sued for mass copyright infringement, Zillow took *months* to cease its display of the photographs at issue in CoStar's original Complaint— images that CoStar specifically identified by both URL and by providing a copy of each infringing image, as set forth in detailed Exhibits to the Complaint.  It took until October 14, 2025—*ten weeks* after CoStar filed this lawsuit—for Zillow to claim it had taken down all the images identified in CoStar's original Complaint.

28.    Not only did Zillow continue to display original Complaint images months after being sued, it also unlawfully displayed ***thousands of new, additional CoStar images, most prominently displaying the CoStar watermark***, after the lawsuit was filed.  Since filing the original Complaint, CoStar has identified ***6,774*** additional copyrighted images displayed on Zillow's platforms—bringing the total number of images at issue to ***53,753*** (and counting). Between August 2025 and February 2026, CoStar sent four separate letters to Zillow identifying the thousands of new copyrighted images being displayed on Zillow's platforms, once again

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

11

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

providing line-item notice of the new images. To no avail. Despite these specific and repeated notices, Zillow refused to change course—continuing to infringe troves of new images, month after month.

29. Worse still, Zillow has **re-published** on its public websites (at least) hundreds of CoStar images, most bearing the CoStar watermark, which CoStar previously specifically identified to Zillow (both via its original Complaint, and via letter), and which Zillow had previously claimed to have removed.

30. Thus, providing Zillow notice—no matter how specific—is futile. In the face of a federal lawsuit alleging prolific mass infringement *and* repeated letters identifying its new, continuing, and now reoccurring infringement, Zillow persists. And Zillow does so despite having the ability to detect and remove CoStar's photographs, particularly given the presence of CoStar's copyright-ownership-identifying star watermark. Zillow has built image recognition algorithms capable of detecting features far more subtle and varied than an identical, consistently-placed, image watermark. And Zillow's *eventual* removal of (some of) CoStar's images from its websites confirms it has the technical ability to do so at any time. Zillow's post-suit conduct thus confirms an unavoidable truth: Zillow, a mass and continuing infringer, made a deliberate business decision, on notice of the risks, to exploit and continue exploiting CoStar's intellectual property, presumably expecting that misconduct to yield a net benefit greater than the alternative option of ceasing its mass infringement, regardless of the legal consequences.

31. Zillow's infringement is on a massive scale, however measured. By way of example, even before discovery identifies its full scope, Zillow's infringement already exceeds the number of infringements that led to the largest judgment in history for the infringement of photographs. In 2019, a monitor appointed by the Federal Trade Commission found that Xceligent, a real estate listing platform, had improperly "derived at least 38,489 copyrighted photographs from its principal competitor, CoStar," and a federal court awarded half a billion dollars ($500,000,000) in damages to CoStar. Undeterred, Zillow now demonstrates an even

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

12

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

greater disregard for CoStar's intellectual property rights—the scope of which only continues to grow as this litigation proceeds.

32. Zillow's misconduct is systematic and must be remedied through judicial intervention. As a result of that misconduct, CoStar is entitled to substantial damages and injunctive relief to prevent continued harm to its business.

## THE PARTIES

33. Plaintiff CoStar Group, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 1201 Wilson Boulevard, Arlington, Virginia, 22209.

34. Plaintiff CoStar Realty Information, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 1201 Wilson Boulevard, Arlington, Virginia, 22209. It is a wholly owned subsidiary of CoStar Group, Inc.

35. Defendant Zillow Group, Inc. is a corporation organized and existing under the laws of the State of Washington with its principal place of business and corporate offices located at 1301 2nd Avenue, Floor 36, Seattle, Washington, 98101.

36. Defendant Zillow, Inc. is a corporation organized and existing under the laws of the State of Washington with its principal place of business and corporate offices located at 1301 2nd Avenue, Floor 36, Seattle, Washington, 98101. Zillow, Inc. is a wholly owned subsidiary of Zillow Group, Inc.

## JURISDICTION AND VENUE

37. This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.* This Court has federal question jurisdiction over claims arising under those statutes pursuant to 28 U.S.C. §§ 1331 and 1338(a).

38. Venue is proper in this district under 28 U.S.C. § 1400(a) because Zillow is incorporated in the State of Washington, and maintains its principal place of business in Seattle,

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

13

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

Washington. Venue is also proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to CoStar's claims occurred in this judicial district.

## BACKGROUND

### A.    CoStar's Investments in Real Estate Photography

39. CoStar Group was founded in 1986 with the mission of digitizing information about the world's real estate. Since its founding, CoStar has invested billions of dollars in creating the most comprehensive database of real estate information in the world and developing platforms to make that content available to people looking to buy, sell, or lease properties.

40. As part of its efforts, CoStar has built the world's largest library of real estate photographs. Over decades, CoStar has employed or hired thousands of professional photographers who have created millions of real estate images, all of which are owned and copyrighted by CoStar. Currently, CoStar's team of dedicated architectural photographers takes over two million original real estate photos annually.

41. Most other listing websites do not make any investment in photography, let alone the significant investments that CoStar has made. CoStar's investment in the creation of this intellectual property thus differentiates it from its competitors and adds tremendous, ongoing value to the real estate industry. CoStar's images reach the public through many products, including its real estate listing websites. These websites include, among others, LoopNet.com, which hosts commercial real estate listings; Homes.com, which hosts residential sales listings; and Apartments.com, which hosts apartment rental listings.

42. Photographs are a critical aspect of real estate listings. Without images, prospective renters lack essential information about a property. Thus, those looking to list properties need images of those properties to attract online traffic from potential renters or buyers. Said differently, professional photographs result in more leads and online impressions (displays on a visitor's screen) for a listing. According to Zillow's own internal data, "[l]istings with 5+ photos receive[] 30% more views."

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

14

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200



Listings with 5+ photos
received **30% more views**.

Source: Zillow internal data, Mar 2025

43.    And as the Chief Marketing Officer of the leading brokerage eXp Realty has recognized, "[p]hotos are the most important thing" for real estate listings.

44.    For these reasons, those looking to advertise listings often rely on CoStar's image library, which is a comprehensive source of real estate photographs available on demand.  And renters searching for an apartment are more likely to view listings with professional photographs.  Thus, CoStar's image library gives it an advantage with both those listing apartments for rent and those seeking to rent an apartment.  If competitors could freely use CoStar's intellectual property, those advantages would be diminished.

45.    CoStar is—and is widely known in the industry to be—the leading licensor of real estate photography in the country, and it provides limited licenses of its photographs to brokers, property managers, owners, and other CoStar customers marketing properties.

46.    CoStar's customers may use properly licensed CoStar photographs in multiple ways.  If a property owner wants to market a listing on one of CoStar's listings websites, he or she can populate the listing with CoStar's copyrighted photographs.  Additionally, CoStar's customers

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

15

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

may use CoStar's photographs on their own websites and marketing materials while they are a CoStar customer.

47. As CoStar's terms and conditions make clear, however, CoStar does *not* permit sublicensing of its photographs. CoStar does not permit customers to use CoStar's photographs on competing real estate listing websites, nor does it permit competitors to use such photographs. Zillow knows this, as evidenced by, for example, its competitive analysis of CoStar wherein Zillow forecasted that CoStar would sue those competitors, like Zillow, who improperly used its photographs.

48. Users of CoStar's listing platforms may also upload their own real estate photographs to a listing. But this is not a requirement, and listers can, and often do, rely on CoStar's copyrighted photographs. None of the photographs at issue in this litigation are owned by CoStar's users; rather, this lawsuit concerns Zillow's infringement of photographs created, owned, and copyrighted by CoStar.

## B. CoStar Protects Its Intellectual Property

49. CoStar goes to great lengths to protect its intellectual property, including its photographs.

50. As mentioned above, CoStar owns the copyrights to the photographs taken by its photographers. As CoStar takes new photographs of real estate properties, it registers them with the United States Copyright Office. Currently, CoStar registers tens of thousands of photographs each month.

51. CoStar also displays an identifying watermark in the bottom-right corner of each photograph that it owns, signifying CoStar copyright ownership. As a policy and practice, CoStar affixes its star watermark to the images it owns (and to which it holds copyrights), and does not display the star watermark on images that it does not own. CoStar's systems automatically implement this policy by affixing CoStar's watermark to CoStar's copyrighted images when they are displayed. CoStar's star watermark on a photograph thus identifies CoStar as the copyright

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

16

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

owner of that image, as is recognized in the industry. CoStar's policy and practice regarding watermarking has been in effect since at least August 2017. The CoStar photographs at issue in this case were all taken in August 2017 or later.

52.    CoStar's watermark reflects its widely-recognized company logo, which consists of five polygons—stylized map pins—arranged in a circle. The negative space left by the arrangement of the five pins forms a five-pointed star, a play on Co*Star*, visually reinforcing the company's name. The star logo watermark can be seen in the following CoStar-owned image of an apartment building in Poughkeepsie, New York.



53.    CoStar's star logo is used consistently and prominently across its platforms and products. It is presently on six separate registered CoStar trademarks and appears as the favicon (an icon associated with a website URL) next to the title of every browser tab opened to any CoStar webpage. For example, Apartments.com uses a green CoStar star logo; Homes.com an orange CoStar star logo; and LoopNet.com a red CoStar star logo.

  

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

17

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

54.     CoStar's star logo is well-known in the real estate industry. Indeed, Zillow Group's 2024 investor presentations identify Apartments.com using the CoStar star logo, underscoring Zillow's familiarity with CoStar's logo prior to and throughout the period of infringement alleged herein.

**C.     Zillow's Role in Online Multifamily Real Estate Listing Markets**

55.     For many years, Zillow has run a website hosting for-sale listings for single-family homes. In the for-sale residential listings market, Zillow has been able to build a website hosting residential home sale listings due to the availability of information via multiple listing services ("MLSs"). MLSs are databases where real estate agents, brokers, and sellers can upload information about for-sale properties including photos, descriptions, features, and other data. MLSs are generally region-specific and provide listings for particular geographic markets. Primarily using data pulled from MLSs, Zillow is able to generate for-sale listings for single-family homes, enabling it to host broad coverage of for-sale residential listings across the country.

56.     Generally, Zillow does not charge home sellers or brokers to display for-sale listings on its website. Instead, Zillow diverts leads for such listings to buyer-side brokers who pay Zillow to receive these leads for a particular area. These leads are generated based on user activity on Zillow's website, such as when a user requests to tour a home or to contact an agent about a home. Leads are allocated to buyer-side brokers based on how much those brokers pay Zillow, with brokers receiving more leads as they pay more. In addition, for some sale transactions, Zillow takes a portion of the buyer-side broker's commission if a sale results from a lead.

57.     The residential rental listing market functions differently. For rentals, as Zillow acknowledges, there is no widespread MLS system providing a central MLS-style repository for rental listing content. It therefore takes significant time, effort, and money to gather information about, and create content for, rental property listings.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW                                    18

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

58.     The way Zillow earns revenue also differs for rentals.  For rental listings, brokers, owners, and property managers can purchase listing advertisements to appear on Zillow and its affiliate and partner sites.  Brokers, owners, and property managers pay for these listing advertisements on a per-listing basis or based on the number of leads or impressions generated.  For some pricing plans, the broker, owner, or property manager pays when a listing results in a signed lease.  Zillow also earns revenue by providing other rental-related products, such as lease applications and tenant screening, as explained below.

59.     Zillow offers various tiers of advertising packages.  The more expensive the tier, the greater a listing's exposure to potential renters.  Higher tiers may include features such as sponsored placement in search results, social media advertising by Zillow, and targeted emails from Zillow to prospective renters who have viewed a listing.  Critically, regardless of the selected advertising tier—which can range from the lowest tier ("Base") to the highest tier ("Signature")—Zillow makes the decision to syndicate listings and their associated images across its network of rental sites, including Trulia and HotPads, as well as to its syndication partners such as Redfin and Realtor.com (discussed further *infra* ¶¶ 94-98).  Indeed, all syndication decisions and processes are made and controlled exclusively by Zillow.  Property managers and brokers merely select their advertising tier.  Zillow alone determines whether a listing will be syndicated—evidenced by the fact it only syndicates buildings with 25 or more units—and exclusively causes and controls the syndication process, including the distribution of listings and photographs to its affiliated sites and external partners.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW                    19

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200



60.    Beyond the sale of rental advertising packages, Zillow generates revenue from rental listings through additional services that it offers to property managers and prospective renters.  These services, which are sometimes provided through partner companies, include setting up property tours, performing rental application screenings, facilitating the creation and signing of leases, and providing renters' insurance.

**D.    Zillow's Growth in Rental Listings is Driven in Significant Part by Its Illicit Free-Riding on CoStar's Copyrighted Image Library**

61.    In May 2024, Zillow trumpeted plans to dramatically expand its presence in the rental listing market.  In a presentation to investors, Zillow announced its intention to "build[] the most comprehensive rental listings marketplace for renters and property managers."  Zillow observed that its website then captured only 60% of "longtail" listings (those in buildings with less than 25 rental units) and 35% of "multifamily" listings (those in buildings with more than 25 rental units).  Zillow set out to change that.  As Zillow has explained, it is attempting to "build[] a

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW                    20

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

nationwide marketplace for renters and landlords, which aims to provide renters with a comprehensive listing of available rental inventory."

62.     Zillow has recognized the difficulty of creating and maintaining a comprehensive rental listing website.  As Zillow stated in the same May 2024 presentation, "no single platform provides a comprehensive marketplace with anywhere near complete coverage of available rental inventory.  There is no MLS for rentals."  Or as Zillow has said separately, "[u]nlike for sale, there is no MLS equivalent in rentals, which makes it challenging to aggregate the estimated 49 million rental units in the U.S. market."  And as Zillow's Chief Financial Officer recently said in another suit, "[m]ultifamily rental listings are significantly different from for-sale home listings, including because rental listings generally are not listed on MLSs (in most regional markets in the U.S.) and usually do not involve agents or brokerages."

63.     Notwithstanding the difficulty of obtaining rental listings, Zillow has reported suspiciously swift growth in the rental listings market.  In the first quarter of 2024, Zillow claimed to have approximately 40,000 multifamily rental properties on its website.  By May 2025, however, that figure had jumped to 60,000—a 50% increase in just one year—according to Zillow's May 2025 letter to investors.  And by the end of 2025, it had reached 72,000.

64.     Further, Zillow stated that it had 1.9 million active rental listings as of December 31, 2024.  But in May 2025, Zillow claimed that it had 2.2 million active rental listings by the end of the first quarter of 2025—purported growth of 300,000 listings in just three months.  CoStar sent Zillow a letter on July 10, 2025, inquiring how Zillow was able to achieve this reported growth in such a short period of time.  Zillow offered no substantive response, responding three weeks later only to say that it was "reviewing the matters raised in [CoStar's] letter."  Eight months on, Zillow has still not provided an answer.

65.     Notably, and as discussed in more detail below, during this same time period, Zillow entered a deal to acquire listings and their associated customers from its competitor Redfin by paying rival Redfin to exit the rental listing business.  Discovery will show the extent to which

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

21

such listings, affirmatively acquired by Zillow, resulted in a portion of the infringement at issue in this case.

66. Along with these reported increases in properties and listings, Zillow has reported significantly increased revenue from its rental listings business. In the first quarter of 2025, Zillow reported a 33% increase in revenue relative to the same quarter in 2024. By the end of 2025, Zillow reported another increase in rentals revenue for that full year. Zillow has also reported that it expects this trend to continue—with the expected growth "primarily driven by growth in multifamily revenue from the addition of new rental properties and higher spend per property." Indeed, Zillow forecasted that for the year 2026, it expects to see continued rentals revenue growth.

67. While Zillow has been vocal about its expansion in the rentals listing market, Zillow has concealed a key means of achieving that goal: Zillow is infringing CoStar's copyrighted images on a staggering scale.

68. Currently, CoStar is aware of at least **53,753** of its copyrighted photographs that Zillow has published without authorization on its network of rental websites. This figure includes both the 46,979 images identified in CoStar's original complaint, as well as the 6,774 additional images that CoStar has discovered since filing suit—a number that continues to grow, month after month, as Zillow's infringement persists. **Exhibit A** sets forth information identifying and summarizing these images. While **Exhibit A** provides the URL for one location of each image on Zillow's website, many of the images appear on Zillow in several locations and are associated with multiple property pages or listings. **Exhibit B** sets forth each of these images, with CoStar's original image alongside an infringing copy found on Zillow's website.

69. As noted above, CoStar's images are frequently displayed multiple times across Zillow's platform, including in different locations on Zillow.com and its partner sites. Indeed, Zillow has displayed CoStar's copyrighted images over **250,000** times. Zillow's systems present these images in varying ways, including displaying versions in which CoStar's watermark is not visible, or not entirely visible, to the user. As a result, the presence or absence of a visible

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

22

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

watermark in any particular instance of display on Zillow or a partner site does not reflect whether the *underlying* CoStar image in Zillow's possession or control—the copy, or copies, stored in Zillow's systems and databases—bear(s) CoStar's watermark. Moreover, the images identified in **Exhibit A** are necessarily limited to those which Zillow has recently displayed on its public websites, and which CoStar has discovered. Discovery is therefore needed (1) to identify the full scope of CoStar images within Zillow's systems, including (2) to determine which of the images identified in **Exhibit A**—whether observed by CoStar in watermarked or unwatermarked form— exist in *Zillow's* possession in watermarked form.

70. Zillow knows it is not authorized to use CoStar's photographs, not least because it has been through and lost an extensive copyright case brought by VHT, discussed in more detail below. And as mentioned above, an internal Zillow memorandum predating this lawsuit indicates Zillow was acutely aware that the improper use of CoStar's images put it at risk of litigation. Yet that risk did not deter Zillow. Even after receiving line-item notice of its mass infringement through this lawsuit and repeated follow-up correspondence from CoStar, Zillow has not only continued to infringe *more* CoStar images, but also *re-displayed* CoStar images that it previously purported to take down. Zillow's mass infringement is a calculated and willful choice to bear the risk of litigation—not the result of lack of knowledge.

71. Indeed, Zillow is building its rentals platform in significant part by using CoStar's copyrighted photographs. Having been exposed for its systematic infringement, Zillow attempts to blame its customers, suggesting without basis that all of the images at issue are direct "user uploads" for which it bears no responsibility. But in addition to offering no support for that assertion—despite the opportunity to do so—Zillow fails to account for the fact that it has actively procured pre-existing listings, and their associated customers, from other companies, including its supposed rival Redfin. Discovery will reveal the sources from which Zillow obtained the images at issue. But in any event, whether or not Zillow's customers may have uploaded or provided

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

some CoStar photographs to Zillow's website, Zillow *itself* extensively uses CoStar's photographs rather than removing them.

72.      On information and belief, and as described herein, Zillow has infringed—and continues to infringe—CoStar's photographs through its own affirmative conduct, including at least as follows: (a) Zillow builds unclaimed property pages and populates those pages with CoStar's photographs sourced from its internal systems, repurposing its stored copies of CoStar's photographs to serve Zillow's own commercial objectives—including luring in new customers; (b) Zillow makes the decision to store copies of the images it procures—from whatever source, whether a customer or a competitor or other source from which Zillow affirmatively purchases or otherwise obtains the image—in its systems and, through deliberate platform policies, retains and continues to use and display those images (such as to populate both unclaimed and active property pages, or as training data for its algorithms) even after any associated customer is no longer using Zillow's platform or affiliated with a given listing; (c) Zillow analyzes and rearranges CoStar's photographs across both unclaimed property pages and active listings, pursuant to its policies and parameters designed to optimize lead generation; (d) Zillow makes affirmative decisions to pay for Google advertisements promoting property pages populated with CoStar's photographs to drive traffic to its website and revenue, regardless of whether the associated property has any available rental listings; and (e) Zillow uses copies of CoStar's photographs, which it has decided to store in its systems, as content to feed its algorithms, which support key features on Zillow's platform, including the Zestimate algorithm and personalized recommendations.  In every instance, Zillow's infringement is the result of its own decisions and actions.

**E.      Zillow Uses CoStar's Photographs to Enhance Its Products, Gain Customers, and Earn Revenue**

73.      Zillow is actively using tens of thousands of CoStar's copyrighted photos, without authorization, in numerous ways.  The vast majority of these photographs have been found on

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

24

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

Zillow's multifamily pages, including active listings and "unclaimed" property pages for which Zillow is soliciting advertisers.

1.  *Zillow Uses CoStar's Photographs to Populate Unclaimed "Property Pages," Sell Rental Listing Advertisements, and Generate Active Listings*

74.     In addition to hosting active sale and rental listings, Zillow itself builds "property pages" for "unclaimed" properties that are not actively on the market for sale or rent.  This is a Zillow undertaking, not the action of its customers.  Zillow populates these "property pages" with content much like an active rental or sale listing, including photographs and property descriptions, in order to attract potential customers—specifically, the property owner, manager, or broker—to host future listings on Zillow's platform.  Zillow does so by inviting property owners and managers to "Claim this property" through the click of a button.

75.     Zillow itself undertakes to build and populate the content on these unclaimed property pages.  For example, among Zillow's other sources of content—e.g., listings obtained as a result of its transaction with Redfin, or other transactions—Zillow's Terms of Service confirm that Zillow demands, and grants itself by way of those mandatory Terms, a perpetual license to user-uploaded content.  Thus, on information and belief, Zillow itself—not at the direction of its users—continues to store copies of previously-uploaded listing content for Zillow's use once a listing expires or there is no longer a user actively affiliated with a given property page.  On its own, Zillow then curates, uses, and re-displays that content, including CoStar's photographs.  For example, Zillow displays that content to site visitors on unclaimed property pages and provides an option for a property owner, manager, or broker for a given property to "claim" the page—thereby becoming a (new) Zillow user who can host their rental listings on Zillow's websites (and do so immediately where the listing already has photographs, including CoStar's photographs).

76.     Once a property owner or manager "claims" a property, Zillow then attempts to sell the property owner or manager advertising packages for future rental listings of their claimed property.  A property owner or manager "claiming" a property is presented with the following

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

25

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

webpage, which requests contact information so that the owner or manager may begin "Advertis[ing] with Zillow Rentals."



77.    As detailed above, Zillow offers various tiers of advertising packages—the more expensive the tier, the more features offered to the customer to ensure their listing gains exposure to potential renters.  Zillow's "Claim this property" pages are thus a means for Zillow to secure new customers, generate more rental listings, and directly profit from the content of such pages.

78.    Zillow often builds these unclaimed "property pages" using CoStar-owned photographs.  For example, the below "property page" features dozens of CoStar photos, including the one below, with Zillow using the images to induce potential customers to "Claim this Property" even though "[t]here are currently no available units" for rent in the building.

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200





79.     While this property is "unclaimed" on Zillow, it is actively listed—with the same CoStar-owned photographs—on CoStar's Apartments.com.







80.     After a property owner or manager "claims" a property from the Zillow-created unclaimed property page, Zillow allows them to populate their future rental listings using the content—including photographs—featured on Zillow's unclaimed property page.  Zillow has publicly acknowledged that property photographs—especially high-quality photographs—are a

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

critical aspect of real estate listings, as photographs provide essential information about a property, without which a listing is of minimal (if any) value to prospective tenants or buyers. By featuring CoStar's professional real estate photographs on unclaimed property pages—and by making those photographs available for immediate use—Zillow induces property owners to list on Zillow and pay associated fees. A property owner who encounters on Zillow a professionally-photographed listing for their own property—populated with CoStar's photographs—is substantially more likely to claim that page than they would be if the page did not feature images, or had non-professional images, because, due to the presence of CoStar's photographs, the listing is instantly marketable given Zillow's offer to let the potential customer then use those images. Thus, Zillow uses CoStar's photographs as a deliberate tool to attract customers, thereby generating revenue— including through those customers' purchase of advertising packages to list the property for rent on Zillow's websites, which unlocks other revenue streams related to landlord-tenant services, such as lease applications and tenant screening.

81. There are any number of examples of Zillow featuring CoStar's photographs on unclaimed "property pages" to attract rental listing customers and thereby generate revenue. For example, as of May 29, 2025, Zillow published the following "unclaimed" property listing appeared on Zillow's website, prominently featuring 25 CoStar photographs and containing a "Claim this property" invite:

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

28

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200





82. As of July 30, 2025, the above listing had since been "claimed": the "Claim this property" button was no longer present, and Zillow had replaced it with a "Set availability alert" button. The "claimed" webpage also stated that the property manager was offering "special offers" for "immediate move-ins," further indicating that the property manager had claimed the page. These changes occurred because a leasing agent claimed the building and chose to do business with Zillow—having been drawn to Zillow though its use of CoStar's photographs.




FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW                29

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

83. Indeed, the listing in its current form included the same 25 CoStar images that were featured when the property was unclaimed. In other words, after using CoStar's photographs to *attract* property owners and managers to do business with Zillow—enticing them to "claim" a property page and purchase rental listing advertisements in the first instance—Zillow *continues* to take advantage of CoStar's photographs to populate listings after the property has been "claimed," using CoStar's photographs for active rental listings and thereby generating revenue.

84. CoStar's professional photography attracts property owners and managers to claim Zillow's unclaimed "property pages." Upon information and belief, Zillow promotes these unclaimed "property pages" featuring CoStar photographs through paid Google search results. For example, the below "unclaimed" property page for "The Laneway" at 9 Burney Street in Boston features over a dozen of CoStar's copyrighted photographs.



85. Upon performing a Google search for the property address, the link to the Zillow listing page appears as "Sponsored," indicating that Zillow paid to have the webpage appear on Google's search platform above other organic (unpaid) search results. Zillow is promoting this listing even though there are no units in the building available on Zillow. In other words, this is

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

30

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

an example of Zillow—not its customers—making use of CoStar photographs as a lure to induce potential customers to come to Zillow's website in order to generate profits.

    

Sponsored

zillow.com
https://www.zillow.com  :

**The Laneway - 9 Burney St Boston MA | Zillow**
Make Apartment Renting Easy. Search, Save, Tour and Sign With Zillow Rentals.
Zillow Has the Most Listings, so You Can Find an Apartment That Checks All...

86.     Further demonstrating Zillow's recognition that professional photographs are critical to building valuable listings and gaining customers and revenue, Zillow requires "at least one high-quality photo of the rental property" for active listings.  Zillow also imposes minimum quality standards for photographs, including the image file type and minimum pixelation.  It is thus no surprise that Zillow also uses CoStar's photos on thousands of active rental listings.

87.     Beyond creating unclaimed "property pages," and then offering the content thereon to populate listings once claimed, Zillow generally takes an active role in curating the content, including photographs, on all of its live rental listings.  Zillow analyzes all listing photos for a property to predict which images "will generate the highest number of contacts for your listing," and then rearranges the order of photographs, including CoStar photographs, accordingly. Notably, Zillow frequently rearranges a listing's photographs in a different manner than that chosen by an owner or property manager to highlight the most attractive and compelling images for a given listing.  To the extent this curation process involves Zillow software, it nevertheless operates pursuant to objectives and parameters deliberately set—and algorithms designed and created—by Zillow personnel.  In other words, whether or not Zillow has implemented software to undertake these tasks more efficiently, the tasks are determined by Zillow, and the software is simply following instructions issued by Zillow management, just like a team of Zillow employees. Zillow thus controls the curation and reordering of listing images—including CoStar's—to

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

31

maximize lead generation, whether through a manual process, or via tools and systems that its employees designed and trained to effectuate Zillow's decided goal.

88.    Zillow also actively monitors and flags images for removal, including images that are "irrelevant" to a property, "do not accurately represent the" property, or "contain explicit or offensive material, personal information, or discriminatory content."  More generally, Zillow has the ability to, and reserves the right to, remove images from its website, including because of copyright infringement.  Indeed, after receiving CoStar's original Complaint, Zillow belatedly, but eventually, removed (at least temporarily) most of the specific images identified therein.  Among other facts, Zillow's removal of CoStar's images demonstrates that Zillow has the right and technical ability to remove CoStar images from its website; it simply, and repeatedly, chooses not to do so—even after being provided with detailed notice of infringement, and even though CoStar watermarks its copyrighted images—as evidenced by Zillow's ongoing delay in effectuating those takedowns, its continuing infringement of new CoStar images, and its recent reoccurring infringement of previously taken down images.  Despite creating and implementing various other mechanisms that analyze images to enhance user experience (such as Zestimates and other machine learning tools, as discussed below), Zillow does not, upon information and belief, attempt to identify or remove CoStar-copyrighted images through detection of CoStar's watermark, or otherwise.

89.    Indeed, about half of the CoStar photographs at issue include CoStar's watermark in copies located to date on Zillow's websites, and Zillow has continued to publish thousands of watermarked images even after CoStar filed suit and reaffirmed that its watermark is an indication of copyright ownership.  In many instances, Zillow's listing pages obscure the watermark, at least until a user clicks on and enlarges the actual photograph.  Because Zillow uses and displays CoStar's photographs in multiple locations and in different formats—including, at times, with the CoStar watermark obscured—discovery is needed to determine the extent of the CoStar copyrighted photographs that are stored in Zillow's systems or libraries, and of those photographs

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

in Zillow's possession (which encompass, but are almost certainly not limited to, the images at issue so far in this lawsuit), which are watermarked or unwatermarked.

90. Zillow is well-aware of the CoStar watermark, as demonstrated by, for example, Zillow's use of the CoStar's logo in its investor materials, as noted above. Moreover, Zillow's image analysis infrastructure, discussed below, is capable of detecting complex visual elements in photographs—such as building materials, room types, and other property features. This powerful machine learning system is thus capable of detecting simple, unchanging visual elements in photographs such as logos and watermarks, meaning Zillow could readily detect the presence of CoStar's star watermark in the bottom righthand corner of images on Zillow's websites and in its systems or libraries. Despite having the technical capability to identify and/or screen out CoStar-watermarked photographs, however, Zillow has chosen not to do so—resulting not only in the continued display of CoStar photographs on Zillow's platforms, but also in the reproduction and storage of CoStar's photographs in Zillow's internal systems, leading to Zillow's use of those copies in a multitude of other ways, as detailed below. Even after being sued. And even after CoStar has brought both ongoing, and recurring, infringement to its attention.

91. In addition to the foregoing examples, the following is just a small sampling of the CoStar-owned images that Zillow has used on unclaimed property pages and active listings.

 

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

33

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

 

 

 

### 2.    *Zillow Distributes CoStar's Photographs to Other Listing Websites*

92.    Zillow's misconduct is not limited to Zillow.com.  After attracting advertising customers to its website and creating listings, Zillow publishes these listings—using CoStar's photographs—to Zillow's other listing websites, including Trulia and HotPads.  Notably, Trulia and HotPads are companies that Zillow acquired (HotPads in 2012, and Trulia in 2015) to expand its audience, and—as to HotPads—specifically its rentals audience.  These acquisitions marked

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW                          34

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

Zillow's early efforts to acquire listings and expand its rental marketplace. Zillow also places listings on its websites StreetEasy, which is a website dedicated specifically to residential real estate sales and rentals in New York City (and New Jersey), and Out East, which is dedicated to homes for sale and rent in the Hamptons.

93. Beyond circulating CoStar's photographs to other listing websites that it owns, Zillow distributes CoStar's intellectual property around the web for display through syndication agreements with its partnership network. In March 2024, Zillow announced an agreement with Realtor.com to syndicate "multifamily rental listings with 25 or more units" to the latter's listing website. As part of this deal, Zillow became the exclusive provider of multifamily listings to its supposed competitor, Realtor.com.

94. In February 2025, Zillow announced a similar agreement with listing website Redfin. Under this agreement, Zillow delivers listings (populated with CoStar-owned images) for display to Redfin and its partner websites, including Rent.com and ApartmentGuide.com. Through this deal—for which Zillow made a $100 million upfront payment to Redfin and will pay at least $75 million more over the next year in guaranteed lead generation payments—Zillow became the exclusive provider of multifamily listings to Redfin, Rent.com, and ApartmentGuide.com. (While Zillow and Realtor.com did not disclose the financial details of their earlier syndication agreement, the Zillow-Redfin terms are likely indicative.) Because of the large guaranteed lead payments, Zillow is incentivized to use CoStar-owned images on its "partner" site to generate leads. Although nominally styled as a "syndication" deal, in practice Redfin effectively shut down its rental operations, including by laying off approximately 450 employees, as Zillow actively transitions Redfin's customer base to Zillow.

95. Viewed in context, the Redfin deal is the just the most recent episode in Zillow's history of transactions through which it has actively obtained listings to expand its rental listing business and then syndicated listings (in some cases back) to other sites.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

35

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

96.     In addition to the multifamily growth that Zillow has generally reported recently, Zillow specifically has experienced a significant increase in multifamily listings since the Redfin transaction.  During this same time, CoStar has discovered its images appearing on Zillow, including for properties for which, upon information and belief, Zillow has built property pages to entice former Redfin customers to advertise on Zillow.

97.     Notably, under the terms of the Redfin agreement, Redfin agreed to exclusively display multifamily listings from Zillow on its platform, and not from any other source.  The content appearing on Redfin's platform is transmitted from Zillow via a syndication feed that is controlled by Zillow.  Zillow alone determines the content that it uploads to the feed, meaning that the multifamily listings that appear on Redfin's platform—and photographs those listings include—are precisely those that Zillow itself chose to transmit for display on Redfin.  On information and belief, Redfin has no independent ability to curate, supplement, or substitute the content that Zillow transmits; rather, Zillow itself is selecting the content and causing the display of multifamily listings—including photographs, from wherever Zillow originally obtained them—appearing on Redfin and its affiliate websites.

98.     In short, Zillow effectively controls the multifamily listings on Realtor.com, Redfin, and their affiliated websites.  And that control is not merely practical, it is contractual: Redfin is prohibited from displaying multifamily listings other than those chosen and provided to Redfin by Zillow, meaning Redfin's websites function (for multifamily listings) as hosts for Zilllow-provided content, including photographs, selected and determined by Zillow.  As explained above, Zillow alone decides which listings, and which photographs, appear on Redfin and its affiliate websites.  The same is presumed to be true for Realtor.com.  Zillow's syndication agreements thus expand the scope of Zillow's infringement, as Zillow is publishing CoStar's copyrighted images not just on Zillow's websites, but also on several other rental listing websites, none of which have authorization to use CoStar's images.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

36

99.    For example, the below listing uses CoStar-owned photographs to advertise a New Jersey apartment building on Zillow.

  

100.    The same listing—along with the same photographs—appears on Realtor.com. The Realtor.com listing indicates that the listing content was "Provided by Zillow."

  

101.    The same listing and same photographs appear on Redfin. Like the Realtor.com website, the Redfin website states that the listing content was "Provided by Zillow."

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

37

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200





3.    *Zillow Uses CoStar's Photographs to Build and Enhance Features on Its Websites*

102.    Beyond using and displaying CoStar's photos in unclaimed property pages, active listings, on other websites, and in online advertisements, Zillow makes active use of the CoStar copyrighted images reproduced and stored in its systems and libraries in several other ways.

103.    One such way is through Zillow's "Zestimates." Zillow's property listings—both active listings and inactive property pages—include Zestimates, which are estimates of a property's market value (both rental value and sale value) generated by a Zillow valuation model. Zestimates incorporate data about a property to generate estimated rental and sale values. Zillow touts its Zestimates as a key feature of its platform for both users listing properties and those seeking a home or rental apartment.

104.    Property photographs are a key input for Zestimates. As Zillow has stated, "photos provide consumers a rich source of information about a home's quality," and are thus key to generating a more accurate Zestimate.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

38

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

105.    Zillow analyzes stored copies of property images to improve the Zestimate for that specific property.  "[I]f a kitchen has granite countertops," Zillow has explained, "the Zestimate now knows—based on the granite countertop's pixels in the home photo—that the home is likely going to sell for a little more."  To enable this pixel-level analysis, Zillow reproduces photographs, including CoStar's photographs—storing copies in its systems, and then uses those copies to train the Zestimate model.   It then uses that model—trained on content that includes CoStar photographs—to analyze photographs in its systems of a specific property, which would (again) include CoStar photographs for many properties.

106.    In addition, Zillow uses its stored copies of a property's photographs, which may include CoStar photographs, to improve Zestimates for *other* listings, as Zillow uses both property-specific data and data from neighboring and comparable properties to calculate the Zestimate for a given property.  In Zillow's words: "The amount of data we have for your home and homes in your area directly affects the Zestimate's accuracy," and "[t]he more we know about homes in an area (including your home), the better the Zestimate," underscoring Zillow's ongoing use of listing photographs to train its algorithms.  Due to the large number of CoStar photographs appearing on Zillow's website, Zillow necessarily uses its stored copies of CoStar's images to calculate Zestimates for the properties on its website, including for properties whose listings do, and do not, feature CoStar photographs.

107.    The following Zillow rental listing displays a rental "Zestimate" generated in part by CoStar's photographs.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

39

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

  

108.    In addition, Zillow stores copies of real estate listing photographs, including by necessity CoStar photographs, to train its machine learning infrastructure, which fuels key features on its websites such as personalized recommendation tools.  Using these custom-built image recognition algorithms—machine learning models that Zillow has developed and trained on CoStar's real estate photographs, among others—Zillow is able to visually extract a home's attributes and features based on the listing photos.  By combining extracted image features with other inputs, such as user behavior data, Zillow is thereby able to generate tailored suggestions for individual users.

109.    Upon information and belief, the image recognition systems that Zillow has developed and trained are designed by Zillow to assist in generating recommended "Homes for you," "Similar homes," or "Similar apartments," suggestions, which are tailored to individual users.  For Zillow's image recognition algorithms to generate useful results, they must be trained using large sets of real estate images—including by necessity Zillow's stored copies of CoStar's photographs, tens of thousands of which appear on Zillow's sites more than a quarter of a million times—to improve the accuracy of personalized recommendations.  Moreover, to generate accurate recommendations, Zillow relies on property listings being populated with content—

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

40

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

critically, listing images—sufficient to compute the degree of similarity between the listing and a given user's known preferences. Thus, by storing and publishing CoStar's photos on its listings, Zillow gains integral input content that it uses to build and power its user recommendations.

110. The images included in **Exhibit A** are necessarily limited to images that were recently displayed by Zillow and discovered by CoStar. Discovery is required to determine the scope of CoStar copyrighted images Zillow has used to train its Zestimate model, recommendation features, image recognition algorithms, and other features.

**F.    Zillow's Prior and Ongoing Misconduct**

111. Zillow is a repeat infringer. Zillow was previously sued by VHT, Inc. for infringing tens of thousands of VHT's real estate images. That lawsuit resulted in a judgment, affirmed on appeal, against Zillow for its infringement of thousands of VHT's photographs.

112. Undeterred, Zillow now willfully infringes tens of thousands of CoStar's copyrighted photographs. And Zillow does so with even more direct involvement than in VHT's lawsuit, for example, by now specifically using CoStar's photographs to invite property owners and managers to purchase rental listings and advertise apartments using those photographs.

113. Zillow's post-suit conduct underscores its willfulness. By continuing to display the CoStar-owned images expressly identified in the original Complaint for weeks and in some cases months, actively infringing thousands *more* CoStar images, most with the CoStar watermark, and now *redisplaying* images that it knows are CoStar-owned and that it purportedly took down, Zillow has demonstrated that its infringement is not only systematic, but deliberate. As discussed above, Zillow has the tools to stop; it is simply choosing not to. Zillow's decision to expand, rather than cease, its infringement while this litigation is pending thus reflects a calculated judgment that the commercial value of CoStar's photographs to Zillow's rental business exceeds—at least by Zillow's calculation—its potential exposure for continuing to infringe. For Zillow, damages for infringement are just the cost of doing business. Such conduct underscores the necessity of judicial intervention, and warrants the full measure of relief available under the Copyright Act.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW                    41

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

## FIRST CLAIM FOR RELIEF
### Copyright Infringement

114. CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

115. Each of CoStar's photographs constitutes an original work of authorship and copyrightable subject matter under the laws of the United States.

116. CoStar owns the photographs shown in **Exhibit B**. For each such photograph, CoStar has validly registered each of the photographs, as detailed in **Exhibit A**, with the United States Copyright Office. For each photograph for which CoStar asserts an infringement claim, a valid registration was obtained by CoStar prior to Zillow's first infringement of the photograph or within 90 days of the photograph's first publication.

117. Zillow had and has access to CoStar photographs through the internet or other means.

118. Zillow has copied, reproduced, prepared derivative works of, distributed to the public, and/or displayed publicly on its websites CoStar's copyrighted photographs—including without limitation those copyrighted works identified in **Exhibit B** hereto—without the consent or authority of CoStar, thereby infringing CoStar's copyrights.

119. Upon information and belief, Zillow's unlawful copying, reproducing, distributing, preparation of derivative works, and public displaying of these CoStar photographs occurred at least on or around the dates set forth in **Exhibit A**.

120. Zillow's copies, reproductions, distributions, derivative works, and displays are identical and/or substantially similar to CoStar's photographs. CoStar, which owns an exclusive right to prepare derivative works of its copyrighted images, did not give Zillow permission to create any derivative works or publicly display those works.

121. Zillow is directly liable for these acts of infringement in violation of 17 U.S.C. §§ 106 and 501.

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

42

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

122. The infringement of CoStar's rights in each of its copyrighted photographs constitutes a separate and distinct act of infringement.

123. Zillow's acts of infringement have been willful, intentional, purposeful, and in disregard of CoStar's rights under the Copyright Act. Zillow knew its acts were infringing and intentionally or recklessly disregarded the law by its conduct.

124. CoStar did not authorize Zillow's acts.

125. CoStar believes that additional instances of Zillow's infringement of its copyrighted photographs will be revealed during the discovery process.

126. As a result of Zillow's willful copyright infringement, CoStar has been and will continue to be damaged as a direct and proximate result of the infringing acts set forth above, and Zillow has profited and will continue to profit as a result of its unlawful infringement of CoStar's copyrighted photographs in an amount to be proven at trial.

127. Zillow's conduct also has caused irreparable and incalculable harm and injuries to CoStar and is ongoing. Unless enjoined, Zillow's conduct will cause further irreparable and incalculable injury, for which CoStar has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### Vicarious Copyright Infringement

128. CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

129. In addition to or in the alternative to Zillow's direct infringement of CoStar's photographs, Zillow is liable for the vicarious infringement of CoStar's photographs.

130. Each of CoStar's photographs constitutes an original work of authorship and copyrightable subject matter under the laws of the United States.

131. CoStar owns the photographs shown in **Exhibit B**. For each such photograph, CoStar has validly registered each of the photographs, as detailed in **Exhibit A**, with the United States Copyright Office. For each photograph for which CoStar asserts an infringement claim, a

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

43

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

valid registration was obtained by CoStar prior to Zillow's first infringement of the photograph or within 90 days of the photograph's first publication.

132. Third parties have and have access to CoStar photographs through the internet or other means.

133. Third parties have copied, reproduced, prepared derivative works of, distributed to the public, and/or displayed publicly on Zillow's websites CoStar's copyrighted photographs—including without limitation those copyrighted works identified in **Exhibit B** hereto—without the consent or authority of CoStar, thereby infringing CoStar's copyrights.

134. Zillow has the right and ability to supervise the infringing conduct on its websites and in its systems and libraries. In response to CoStar's identification of its copyrighted images on Zillow's platforms—provided to Zillow by URL link and image copies—Zillow eventually removed an instance of those images, at least temporarily, from its websites.

135. Zillow also has the capability to use its image recognition software to identify and remove photographs bearing CoStar watermarks, further enabling it to supervise infringing conduct on its websites and within its systems and libraries.

136. Zillow has declined to exercise its right to stop the infringement of CoStar's photographs on Zillow's websites.

137. Zillow receives a direct financial benefit from the infringement of CoStar's photographs on Zillow's websites, including, but not limited to, from the sale of rental listing advertisements, increased use of its websites by those looking to lease property as the lessor or lessee, and the sale of additional products and services related to the lease of rental property.

138. Upon information and belief, the unlawful copying, reproducing, distributing, creation of derivative works, and public displaying of these CoStar photographs occurred at least on or around the dates set forth in **Exhibit A**.

139. The copies, reproductions, distributions, derivative works, and displays are identical and/or substantially similar to CoStar's photographs. CoStar, which owns an exclusive

right to prepare derivative works of its copyrighted images, did not provide permission to create any derivative works.

140. Zillow is liable for these acts of infringement in violation of 17 U.S.C. §§ 106 and 501.

141. The infringement of CoStar's rights in each of its copyrighted photographs constitutes a separate and distinct act of infringement.

142. Zillow's acts of infringement have been willful, intentional, purposeful, and in disregard of CoStar's rights under the Copyright Act. Zillow knew its acts were infringing and intentionally or recklessly disregarded the law by its conduct.

143. CoStar did not authorize Zillow's acts.

144. CoStar believes that additional instances of Zillow's vicarious infringement of its copyrighted photographs will be revealed during the discovery process.

145. As a result of Zillow's willful copyright infringement, CoStar has been and will continue to be damaged as a direct and proximate result of the infringing acts set forth above, and Zillow has profited and will continue to profit as a result of its unlawful infringement of CoStar's copyrighted photographs in an amount to be proven at trial.

146. Zillow's conduct also has caused irreparable and incalculable harm and injuries to CoStar and is ongoing. Unless enjoined, Zillow's conduct will cause further irreparable and incalculable injury, for which CoStar has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, CoStar prays for relief as follows:

147. For an order pursuant to 17 U.S.C. § 502 permanently enjoining and restraining Zillow and its officers, agents, servants, and employees and all those in active concert or participation with them from directly committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating, directly or vicariously, the

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

infringements of CoStar's exclusive rights under the Copyright Act, or from authorizing any other person to do the same;

148.   For an award pursuant to 17 U.S.C. § 504 of CoStar's actual damages and Zillow's profits or, alternatively at CoStar's election, for statutory damages for Zillow's infringement and willful infringement—including without limitation for the instances of infringement identified in **Exhibit B**, and other instances of infringement subsequently disclosed or uncovered during discovery—in the maximum amount allowable by law;

149.   For a finding that Zillow has willfully infringed CoStar's federally registered copyrights;

150.   For further permanent injunctive relief as deemed necessary by the Court, including without limitation for an order pursuant to 17 U.S.C. § 503(b) or otherwise requiring the purging and destruction of all CoStar copyrighted photographs from Zillow's database(s) and system(s) by an independent source that reports to CoStar and the Court and monitors Zillow's future compliance with the Court's orders;

151.   For an award of CoStar's costs, including its reasonable attorneys' fees;

152.   For pre-judgment and post-judgment interest according to law;

153.   For exemplary and punitive damages to the extent available; and

154.   For such further and additional relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CoStar hereby demands a trial by jury.

Dated: March 27, 2026

Respectfully submitted,

By: _____
Nicholas J. Boyle, *pro hac vice*
Sarah A. Tomkowiak, *pro hac vice*
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000

FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-02591-JNW

46

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201
nicholas.boyle@lw.com
sarah.tomkowiak@lw.com

Steven W. Fogg, WSBA No.23528
CORR CRONIN LLP
1015 Second Avenue, 10th Fl
Seattle, WA 98104
Tel: 206.625.8600
Fax: 206.625.0900
sfogg@corrcronin.com

*Attorneys for Plaintiffs*
*CoStar Group, Inc. and CoStar Realty*
*Information, Inc.*

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200